# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIJAN NIKOOPOUR, an individual,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company; and WESTERN PROGRESSIVE, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 17cv2015-MMA (WVG)<br><br>**ORDER GRANTING DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION TO DISMISS**<br><br>[Doc. No. 4] |

Plaintiff Bijan Nikoopour ("Plaintiff") filed a Complaint against Ocwen Loan Servicing, LLC ("Ocwen") and Western Progressive, LLC (collectively "Defendants") in the Superior Court for the County of San Diego alleging: (1) breach of contract; (2) negligence; and (3) violations of California's Unfair Competition Law ("UCL"). *See* Doc. No. 1-2 (hereinafter "Complaint"). On September 29, 2017, Defendants removed the action to this Court. *See* Doc. No. 1. Ocwen moves to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 4. Plaintiff filed an opposition to Ocwen's motion, to which Ocwen replied. *See* Doc. Nos. 7, 8. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 9. For the reasons set forth below, the Court **GRANTS** Ocwen's motion to dismiss.

## BACKGROUND[1]

On or about August 31, 2006, Plaintiff obtained a loan in the amount of eight hundred eighty-one thousand two hundred and fifty dollars ($881,250.00) to purchase the property located at 13668 Landfair Road, San Diego, California, 92130. Complaint ¶ 22. Plaintiff obtained the loan through Mortgageit, Inc. as the lender of the Note. *Id.* The Note was secured by a Deed of Trust. *Id.*, Exh. A. On or about November 2013, the servicing rights of the Note were transferred to Ocwen. *Id.* ¶ 23.

Due to financial hardships, Plaintiff fell behind on his mortgage payments. *Id.* ¶ 24. Plaintiff inquired with Ocwen about "foreclosure prevention alternatives." *Id.* ¶ 25. Ocwen sent Plaintiff a loan modification application, and on or about December 10, 2014, Plaintiff returned "the completed loan modification application" to Ocwen via mail. *Id.* However, from December 2014 to "approximately July 2015, Plaintiff was given the run around by OCWEN." *Id.* ¶ 26. As such, Plaintiff filed a complaint against Ocwen in state court. *Id.* ¶ 28. Plaintiff dismissed this action without prejudice on or about October 31, 2016. *Id.* ¶ 36.

On or about July 28, 2015, Plaintiff filed for Chapter 13 bankruptcy. *Id.* ¶ 30. Plaintiff alleges that "on or about August or October 2015" or "October-November 2015," Ocwen approved Plaintiff for a step rate loan modification while in bankruptcy. *Id.* ¶¶ 31, 39; *see also id.*, Exh. B. However, Plaintiff alleges that Ocwen representatives provided Plaintiff with four different addresses where Plaintiff could send his payment. *Id.* ¶ 33. As such, "Plaintiff did not know where to send the loan modification payment to and could not tender payment." *Id.* When Plaintiff "followed up" with Ocwen in November and December 2015 to inquire about where to send his payments, Ocwen indicated that since it had not received payment by November 1, 2015, "the loan

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

modification was no longer on the table." *Id.* ¶ 34. Plaintiff dismissed the bankruptcy on November 3, 2015. *Id.*

In July 2016, Plaintiff claims Ocwen approved him for a second loan modification. *Id.* ¶ 35. Plaintiff was dissatisfied, however, because the "new loan modification was nearly double the interest rate of the initial loan modification approval[.]" *Id.* Plaintiff requested Ocwen "honor" the terms of the first loan modification, but Ocwen "refused." *Id.* Plaintiff believes that Ocwen intends to foreclose upon the property. *Id.* ¶ 37. Based upon these allegations, Plaintiff commenced the instant action against Defendants on August 29, 2017, alleging breach of contract, negligence, and violations of California's UCL. *See* Complaint.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to

defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

**A.     Ocwen's Request for Judicial Notice**

As an initial matter, Ocwen requests the Court take judicial notice of four public records (Exhibits A-D) relating to Plaintiff's Complaint, and further requests that the Court incorporate by reference Exhibit E into Plaintiff's Complaint. *See* Doc. No. 4-2. Exhibit A is a Deed of Trust dated August 24, 2009, recorded in the San Diego County Recorder's Office. Exhibit B is a Notice of Default and Election to Sell dated June 29, 2009, recorded in the San Diego County Recorder's Office. Exhibit C is a Notice of Default and Election to Sell dated September 17, 2010, recorded in the San Diego County Recorder's Office. Exhibit D is a Notice of Default and Election to Sell dated January 5, 2015, recorded in the San Diego County Recorder's Office. Exhibit E is a Loan Modification Offer from Ocwen to Plaintiff dated August 6, 2015.

Generally, a district court's review on a 12(b)(6) motion to dismiss is "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)).

However, "a court may take judicial notice of matters of public record," *id.* at 689 (internal quotations omitted), and of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125–26; *see also* Fed. R. Evid. 201.

Here, Plaintiff does not object to Ocwen's request for judicial notice. Having reviewed the five exhibits attached to Ocwen's request for judicial notice, the proffered documents have either been incorporated by reference into the Complaint, or are otherwise a matter of public record. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); Fed. R. Evid. 201(b). Accordingly, the Court **GRANTS** Ocwen's request for judicial notice.

**B.     Ocwen's Motion to Dismiss**

In its motion, Ocwen argues that the Court should dismiss Plaintiff's Complaint for the following reasons: (1) Plaintiff's breach of contract claim is premised on a contract that did not exist, and on which he failed to perform; (2) Ocwen did not owe Plaintiff a duty of care, and even if it did, Plaintiff alleges insufficient facts to show Ocwen breached that duty; and (3) Plaintiff's UCL claim fails because it is premised on the same conduct as Plaintiff's breach of contract and negligence claims. *See* Doc. No. 4-1 at 1. The Court addresses Ocwen's arguments in turn.

**1.  Breach of Contract**

Plaintiff alleges he entered into a loan modification agreement with Ocwen, but Ocwen breached the agreement by moving "forward with the non-judicial foreclosure sale proceedings" and failing to honor the loan modification agreement. Complaint ¶ 43. Ocwen argues that "Plaintiff's breach of contract claim fails because he fails to attach any contract to the complaint, fails to allege the existence of a contract, and failed to perform on any alleged contract." Doc. No. 4-1 at 4.

To bring a cause of action for breach of contract, Plaintiff must prove: "(1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3)

defendant's breach; and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011); *see also* Judicial Council of California Civil Jury Instruction No. 303 (describing the second essential factual element of a breach of contract claim as "[t]hat [Plaintiff] did all, or substantially all, of the significant things that the contract required [or] was excused from doing those things."). The plaintiff bears the burden of establishing each of these elements. *See Bank of Am., N.A. v. Roberts*, 159 Cal. Rptr. 345, 350 (Ct. App. 2013).

### a. Plaintiff Sufficiently Alleges the Existence of a Contract

Ocwen first contends that Plaintiff fails to allege the existence of a contract. In response, Plaintiff relies on Exhibit B attached to his Complaint, and claims that he outlined the specific terms of the contract in his Complaint. *See* Doc. No. 7 at 8. Ocwen argues that while Plaintiff alleges "*some terms*" of a possible modification option, his allegations "fall[] well short of setting out the terms of the contract verbatim." Doc. No. 4-1 at 5 (emphasis added). Ocwen contends that Plaintiff is required to allege the terms of the contract verbatim, or attach the agreement to the Complaint. *See id.* Ocwen cites to a California state court case which held that "if the action is based on an alleged breach of written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference." *Otworth v. S. Pac. Transp. Co.*, 166 Cal. App. 3d 452, 458-59 (Ct. App. 1985).

Ocwen's reliance on *Otworth*, however, is misplaced because "the majority rule in district courts in this circuit rejects application of *Otworth* to federal actions; rather, the sufficiency of the complaint is governed according to the Federal Rules of Civil Procedure and federal law interpreting those rules." *James River Ins. Co. v. DCMI, Inc.*, 2012 WL 2873763, at *3 (N.D. Cal. July 12, 2012); *see also Habtemariam v. Vida Capital Group, LLC*, 2017 WL 2930846, at *3 (E.D. Cal. July 10, 2017); *Iglesia Cristiana Luz Y Verdad v. Church of Mutual Ins. Co.*, 2016 WL 692839, at *3 (N.D. Cal. Feb. 19, 2016); *Griffin v. Green Tree Servicing, LLC*, 2016 WL 6782763, at *5 (C.D. Cal. Feb. 5, 2016); *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 2014 WL 1664272, at *3

(S.D. Cal. Apr. 25, 2014).

Under federal pleading standards, a "plaintiff must identify with specificity the contractual obligations allegedly breached by the defendant." *Misha Consulting Grp., Inc. v. Core Educ. & Consulting Solutions, Inc.*, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013). "[M]ere legal conclusions that a contract existed . . . will be insufficient to survive a motion to dismiss." *Garibaldi v. Bank of Am. Corp.*, 2014 WL 172284, at *3 (N.D. Cal. Jan. 15, 2014).

Here, the Court finds that Plaintiff has sufficiently alleged the existence of a contract. For example, Plaintiff alleges that the parties entered into this agreement on or around August-November 2015. *See* Complaint ¶¶ 31, 39. Moreover, Plaintiff alleges that the modification balance was $1,207,705.75, that the term of the loan modification was 251 months, the interest rate was 2%, Plaintiff owed monthly payments in the amount of $3,657.24, and that the first loan modification payment was due on November 1, 2015. *Id.* ¶ 39. Though the Complaint could be more specific, the Complaint outlines the relevant terms of the alleged agreement. As such, taking Plaintiff's allegations as true, the Court finds that Plaintiff's allegations are sufficient to allege the existence of a contract. *See Nasseri v. Wells Fargo Bank, N.A.*, 147 F. Supp. 3d 937, 941 (N.D. Cal. 2015) ("The terms of the contract are sufficiently provided for the purposes of this motion so as to give Wells Fargo notice of the alleged breach."); *Celebrity Chefs Tour, LLC*, 2014 WL 1664272, at *4 ("These are sufficient allegations of the substance of the contract's relevant terms."); *Misha Consulting Grp., Inc.*, 2013 WL 6073362, at *2 (finding that where the complaint identifies the specific provision of the contract allegedly breached by the defendants, the plaintiff's allegations "put the defendants on notice and give rise to a plausible claim for relief.").

b. Plaintiff Fails to Sufficiently Allege an Excuse for Non-Performance

Ocwen next argues that even if Plaintiff has sufficiently alleged the existence of a contract, Plaintiff fails to allege performance and excuse for non-performance. *See* Doc. No. 4-1 at 5-6. Plaintiff concedes that he did not make any payments on the note.

Specifically, Plaintiff asserts that he "tried to make payments on his Note," but was unable to because Ocwen provided Plaintiff "four (4) different addresses where payments needed to be sent to." Doc. No. 7 at 9; *see also* Complaint ¶¶ 33, 41. "Plaintiff did not feel comfortable sending large sums of money to random addresses provided by different representatives[.]" Doc. No. 7 at 9. Thus, the Court must determine whether Plaintiff has identified an excuse for his non-performance.

"California law requires a plaintiff to identify excuses for non-performance with specificity in the pleadings." *Berkeley v. Wells Fargo Bank*, 2015 WL 6126815, at *6 (N.D. Cal. Oct. 19, 2015) (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1389 (Ct. App. 1990)). In California, performance is excused when it is "prevented or delayed by the act of the creditor, or by the operation of law[.]" Cal. Civ. Code § 1511.

Here, the Court finds that Plaintiff has not sufficiently alleged an excuse for his non-performance. Plaintiff repeatedly claims that Ocwen provided Plaintiff with "four (4) different addresses where payments needed to be sent too [sic]." Complaint ¶ 33. However, Plaintiff does not claim that any of these addresses were incorrect, or that Ocwen otherwise "prevented or delayed" Plaintiff's payment. Cal. Civ. Code § 1511. Plaintiff's allegations are further undermined by the loan modification offered to Plaintiff, attached to Ocwen's Request for Judicial Notice as Exhibit E. *See* Doc. No. 4-7. The loan modification specifically outlines four different ways to tender payment to various addresses (i.e., overnight delivery, bank wire, money gram, or submitting payment to Western Union). *See id.* at 3. Thus, it appears Plaintiff had multiple options available to him. Lastly, Plaintiff does not allege that he attempted to send his payment to one of the four addresses provided, but was denied. As such, Plaintiff's allegations are insufficient to allege excuse of performance. *See DirectTV, LLC v. E&E Enterprises Global, Inc.*, 2018 WL 707964, at *2 (C.D. Cal. Feb. 5, 2018) (dismissing first counterclaim for breach of contract for failure to specifically plead an excuse of performance with leave to amend).

Accordingly, the Court **DISMISSES** Plaintiff's breach of contract claim without prejudice and with leave to amend.

### 2. Negligence

In his second cause of action, Plaintiff alleges that Ocwen was negligent in failing to honor the terms of the loan modification agreement, stonewalling Plaintiff's attempts to tender payment, and initiating foreclosure. Complaint ¶ 50. Ocwen argues that it did not owe Plaintiff a duty of care, and even if it did, Plaintiff alleges insufficient facts to show Ocwen breached that duty. *See* Doc. No. 4-1 at 7.

"To prevail on [a] negligence claim, plaintiffs must show that [the defendant] owed them a legal duty, that it breached the duty, and that the breach was a proximate or legal cause of their injuries." *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477 (2001); *see also* Cal. Civ. Code § 1714. "The California Supreme Court has identified six factors, known as the *Biakanja* factors, to determine whether there is a duty of care." *Galindo v. Ocwen Loan Servicing, LLC*, --F. Supp. 3d--, 2017 WL 4355130, at *4 (N.D. Cal. Sept. 29, 2017). The six *Bakanja* factors are: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury the plaintiff suffered; (5) the moral blame connected to the defendant's conduct; and (6) the policy of preventing future harm. *Biakanja v. Irving*, 320 P.2d 16, 19 (Cal. 1958). "Whether a duty of care exists is a question of law to be determined on a case-by-case basis." *Alvarez v. BAC Home Loans Servicing, L.P.*, 176 Cal. Rptr. 3d 304, 306 (Ct. App. 2014) (citing *Lueras v. BAC Home Loans Servicing, LP*, 163 Cal. Rptr. 3d 804, 816 (Ct. App. 2013)).

California courts are divided on whether a loan servicer owes a duty of care in the residential loan context. *Compare Lueras*, 163 Cal. Rptr. 3d at 820 (holding loan service providers do not owe a plaintiff a duty of care when considering a loan modification application), *with Alvarez*, 176 Cal. Rptr. 3d at 310 (concluding that "because defendants allegedly agreed to consider modification of the plaintiffs' loans, the *Biakanja* factors

clearly weight in favor of a duty [of care].").  Ocwen urges the Court to follow *Lueras*, while Plaintiff contends that the Court should follow *Alvarez*.

In a recent unpublished decision, the Ninth Circuit indicated that "[i]n California, as a 'general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" *Badame v. J.P. Morgan Chase Bank, N.A.*, 641 F. App'x 707, 709 (9th Cir. 2016) (quoting *Lueras*, 163 Cal. Rptr. 3d 804 at 820). The Ninth Circuit concluded that "Chase did not owe Plaintiffs a duty of care when considering their loan modification application because 'a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money.'" *Badame*, 641 F. App'x at 709 (quoting *Lueras*, 163 Cal. Rptr. 3d at 820); *see also Anderson v. Deutsche Bank Nat. Tr. Co. Americas*, 649 F. App'x 550, 552 (9th Cir. 2016) (finding no duty of care where the borrower's negligence claim is based on allegation of delay in the processing of loan modification application). Thus, to the extent the Ninth Circuit has addressed the question, it appears that the Ninth Circuit agrees with the reasoning set forth in *Lueras*.

Moreover, numerous district courts in the Ninth Circuit have similarly found persuasive the reasoning of the *Lueras* court. *See Forster v. Wells Fargo Bank, N.A.*, 2018 WL 509967, at *4 (N.D. Cal. Jan. 23, 2018) ("This Court finds the *Lueras* line of cases to be more persuasive and therefore concludes that, were it to address the issue, the California Supreme Court most likely would find that a mortgage servicer does not owe a borrower a duty of care in processing an application for a residential loan modification."); *Galindo*, -- F. Supp. 3d --, 2017 WL 4355130, at *5 ("Because the weight of Ninth Circuit authority, albeit unpublished, follows *Lueras*, this Court does the same."); *Shupe v. Nationstar Mortgage LLC*, 231 F. Supp. 3d 597, 605 (E.D. Cal. 2017) ("This Court agrees that the *Lueras* court is more persuasive[.]").

Here, the Court finds the *Lueras* line of cases to be more persuasive and concludes that pursuant to *Lueras*, Plaintiff cannot establish that Ocwen owed Plaintiff a duty of

care in the loan modification process. Moreover, "as *Lueras* makes clear, affording Plaintiff[] leave to amend would be futile." *Galindo*, --F. Supp. 3d--, 2017 WL 4355130, at *5; *see also Forster*, 2018 WL 509967, at *4 (concluding that "cases involving applications for residential loan modification . . . fall within the general rule that financial institutions do not owe borrowers a common law duty of care" and dismissing the plaintiff's negligence claim with prejudice). As such, Plaintiff's negligence claim is subject to dismissal with prejudice.[2]

The Court is mindful that in Plaintiff's opposition to the motion to dismiss, Plaintiff appears to argue that Ocwen is also negligent per se. *See* Doc. No. 7 at 13. As Ocwen correctly notes, negligence per se is an evidentiary presumption, codified in California Evidence Code § 669. Negligence per se is not a cause of action. *See Harris v. Burlington N. Santa Fe Railroad*, 2013 WL 12122668, at *3 (C.D. Cal. July 12, 2013). "[A]n underlying claim of ordinary negligence must be viable before the presumption of negligence of Evidence Code section 669 can be employed." *Cal. Serv. Statoin & Auto Repair Ass'n v. Am. Home Assurance Co.*, 73 Cal. Rptr. 182, 190 (Ct. App. 1998). Specifically, the "Evidence Code section 669 presumption of negligence applies only after determining that the defendant owes the plaintiff an independent duty of care[.]" *Id.* at 192. In the absence of a "viable duty," Plaintiff's "negligence per se claim fails just as [the] negligence claim fails." *Spencer v. DHI Mortg. Co., Ltd.*, 642 F. Supp. 2d 1153, 1162 (E.D. Cal. 2009). Thus, any theory of negligence per se fails because Ocwen did not owe Plaintiff a duty of care.

Accordingly, the Court **DISMISSES** Plaintiff's negligence claim **with prejudice**.

/ / /
/ / /

---

[2] Ocwen also contends that the economic loss doctrine further bars Plaintiff's negligence claim. *See* Doc. No. 4-1 at 7. The Court need not reach this argument, however, as the Court concludes that Ocwen did not owe Plaintiff a duty of care.

### 3. UCL

In his third cause of action, Plaintiff alleges that Ocwen engaged in unfair competition by refusing to "honor the terms of the Agreement by stonewalling Plaintiff[']s attempt to tender payment on the Agreement." Complaint ¶ 59. Ocwen's acts were "willful, oppressive, and malicious, in that [it] engaged in acts of unfair competition with the deliberate intent to injure Plaintiff." *Id.* ¶ 60. Ocwen argues Plaintiff's UCL claim fails as it is dependent on his failed breach of contract and negligence claims. *See* Doc. Nos. 4-1 at 12, 8 at 7.

California Business & Professions Code § 17200 "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations omitted). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). An action brought under the "unlawful" prong of this statute "borrows" violations of other laws when committed pursuant to business activity. *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992). "Unfair" conduct must be violative of a public policy "tethered to specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Ass'n,* 106 Cal. Rptr. 46, 53 (Ct. App. 2010); *see also Cel-Tech*, 20 Cal. 4th at 186–87 (requiring finding of unfairness under UCL be tethered to legislatively declared policy). Lastly, under the fraudulent prong, a plaintiff must "show deception to some members of the public . . . [or] allege that members of the public are likely to be deceived." *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1207 (E.D. Cal. 2013) (internal quotations and citations omitted). Fraudulent conduct must be pled with particularity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (noting that Rule 9(b) applies to claims in federal court under the UCL).

Here, it is unclear which prong(s) of the UCL Plaintiff relies upon in asserting a UCL claim. Regardless, Plaintiff's UCL claim fails under all three prongs. With respect

to the "unlawful" prong, Section 17200 "borrows" violations from other laws by making them independently actionable as unfair competitive practices. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). Because Plaintiff predicates his UCL claim on the same allegations and theories alleged in his breach of contract and negligence claims, and because Plaintiff fails to state viable breach of contract and negligence claims, Plaintiff's UCL claim based upon unlawful conduct similarly fails. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) ("If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails.") (quoting *Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193, at *11 (C.D. Cal. Sept. 3, 2014)); *see also Simila v. Am. Sterling Bank*, 2010 WL 3988171, at *5 (S.D. Cal. Oct. 12, 2010) (dismissing claim for unlawful competition because all causes of action which the claim "borrows" are dismissed). Regarding the "unfair" prong, Plaintiff has not tethered any unfair practice to a "specific constitutional, statutory, or regulatory provision[]." *Drum,* 106 Cal. Rptr. at 53. Thus, any claim under the "unfair" prong is similarly subject to dismissal. *See Simila*, 2010 WL 3988171, at *6. Lastly, with respect to the "fraudulent" prong, Plaintiff fails to allege any facts showing that members of the public are likely to be deceived by Ocwen's practices. *See Herrejon*, 980 F. Supp. 2d at 1207. Moreover, Plaintiff has not satisfied the heightened pleading standard of Rule 9(b). *See Kearns*, 567 F.3d at 1127 (noting that fraudulent conduct must be pleaded with particularity). As such, Plaintiff fails to state a plausible claim under the UCL.

Accordingly, the Court **DISMISSES** Plaintiff's UCL claim without prejudice and with leave to amend.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Ocwen's motion to dismiss. Plaintiff must file an amended complaint that cures the deficiencies identified herein with respect to his breach of contract and UCL claims on or before **March 12, 2018**.

**IT IS SO ORDERED.**

Dated: February 23, 2018

*[signature]*

HON. MICHAEL M. ANELLO
United States District Judge