# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIJAN NIKOOPOUR, an individual,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company; and WESTERN PROGRESSIVE, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: 17cv2015-MMA (WVG)<br><br>**ORDER GRANTING DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION TO DISMISS**<br><br>[Doc. No. 14] |

Plaintiff Bijan Nikoopour ("Plaintiff") filed a First Amended Complaint against Ocwen Loan Servicing, LLC ("Ocwen") and Western Progressive, LLC (collectively "Defendants") in the United States District Court for the Southern District of California alleging: (1) breach of contract; and (2) violations of California's Unfair Competition Law ("UCL"). *See* Doc. No. 13 (hereinafter "FAC"). Ocwen moves to dismiss Plaintiff's FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 14-1. Plaintiff filed an opposition to Ocwen's motion, to which Ocwen replied. *See* Doc. Nos. 16, 19. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 20. For the reasons set forth below, the Court **GRANTS** Ocwen's motion to dismiss.

## Background[1]

On or about August 31, 2006, Plaintiff obtained a loan in the amount of eight hundred eighty-one thousand two hundred and fifty dollars ($881,250.00) to purchase the property located at 13668 Landfair Road, San Diego, California, 92130. FAC ¶ 22. Plaintiff obtained the loan through Mortgageit, Inc. as the lender of the Note. *Id.* The Note was secured by a Deed of Trust. *Id.*, Exh. A. On or about November 2013, the servicing rights of the Note were transferred to Ocwen. *Id.* ¶ 23.

Due to financial hardships, Plaintiff fell behind on his mortgage payments. *Id.* ¶ 24. Plaintiff inquired with Ocwen about "foreclosure prevention alternatives." *Id.* ¶ 25. Ocwen sent Plaintiff a loan modification application, and on or about December 10, 2014, Plaintiff returned "the completed loan modification application" to Ocwen via mail. *Id.* However, from December 2014 to "approximately July 2015, Plaintiff was given the run around by OCWEN." *Id.* ¶ 26. As such, Plaintiff filed a complaint against Ocwen in state court. *Id.* ¶ 28. Plaintiff dismissed this action without prejudice on or about October 31, 2016. *Id.* ¶ 37.

On or about July 28, 2015, Plaintiff filed for Chapter 13 bankruptcy. *Id.* ¶ 30. Plaintiff alleges that "on or about August or October 2015" or "October-November 2015," Ocwen approved Plaintiff for a step rate loan modification while in bankruptcy. *Id.* ¶¶ 31, 40; *see also id.*, Exh. B. However, Plaintiff alleges that Ocwen representatives provided Plaintiff with four different addresses where Plaintiff could send his payment. *Id.* ¶ 34. As such, "Plaintiff did not know where to send the loan modification payment to." *Id.* When Plaintiff "followed up" with Ocwen in November and December 2015 to inquire about where to send his payments, Ocwen indicated that since it had not received payment by November 1, 2015, "the loan modification was no longer on the table." *Id.* ¶

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

35. Plaintiff dismissed the bankruptcy on November 3, 2015. *Id.*

On or about July 2016, Plaintiff claims Ocwen approved him for a second loan modification. *Id.* ¶ 36. Plaintiff was dissatisfied, however, because the "new loan modification was nearly double the interest rate of the initial loan modification approval[.]" *Id.* Plaintiff requested Ocwen "honor" the terms of the first loan modification, but Ocwen "refused." *Id.* Plaintiff believes that Ocwen intends to foreclose upon the property. *Id.* ¶ 38. Based upon these allegations, Plaintiff commenced the instant action against Defendants on August 29, 2017, alleging breach of contract and violations of California's UCL. *See* FAC.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

### A. Ocwen's Request for Judicial Notice

As an initial matter, Ocwen requests the Court take judicial notice of four public records (Exhibits A-D) relating to Plaintiff's FAC, and further requests that the Court incorporate by reference Exhibit E into Plaintiff's FAC. *See* Doc. No. 14-2. Exhibit A is a Deed of Trust dated August 24, 2009, recorded in the San Diego County Recorder's Office. Exhibit B is a Notice of Default and Election to Sell dated June 22, 2009, recorded in the San Diego County Recorder's Office. Exhibit C is a Notice of Default and Election to Sell dated September 17, 2010, recorded in the San Diego County Recorder's Office. Exhibit D is a Notice of Default and Election to Sell dated January 5, 2015, recorded in the San Diego County Recorder's Office. Exhibit E is a Loan Modification Offer from Ocwen to Plaintiff dated August 6, 2015.

Generally, a district court's review on a 12(b)(6) motion to dismiss is "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)). However, "a court may take judicial notice of matters of public record," *id.* at 689

(internal quotations omitted), and of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125–26; *see also* Fed. R. Evid. 201.

Here, Plaintiff does not object to Ocwen's request for judicial notice. Having reviewed the five exhibits attached to Ocwen's request for judicial notice, the proffered documents have either been incorporated by reference into the FAC, or are otherwise a matter of public record. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); Fed. R. Evid. 201(b). Accordingly, the Court **GRANTS** Ocwen's request for judicial notice.

**B.     Ocwen's Motion to Dismiss**

In its motion, Ocwen argues that the Court should dismiss Plaintiff's FAC for the following reasons: (1) Plaintiff's breach of contract claim is premised on a contract that did not exist, and on which he failed to perform; and (2) Plaintiff's UCL claim fails because it is premised on the same conduct as Plaintiff's breach of contract claim. *See* Doc. No. 14-1 at 1. The Court addresses Ocwen's arguments in turn.

**1.     Breach of Contract Claim**

Plaintiff alleges he entered into a loan modification agreement with Ocwen, but Ocwen breached the agreement by moving "forward with the non-judicial foreclosure sale proceedings" and failing to honor the loan modification agreement. FAC ¶ 44. The Court previously found that Plaintiff has sufficiently alleged the terms of the loan modification offer. *See* Doc. No. 12 at 7. Ocwen now argues that there are no allegations that Plaintiff ever signed and returned the loan modification offer. *See* Doc. No. 14-1 at 5. Moreover, Ocwen contends the statute of frauds bars Plaintiff's breach of contract claim. *See id.* at 6. Lastly, Ocwen claims that even if Plaintiff could allege the parties entered into a loan modification agreement, Plaintiff concedes he did not perform and has not alleged an excuse for his non-performance. *See id.* at 7.

To bring a cause of action for breach of contract, Plaintiff must prove: "(1) the

existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011); *see also* Judicial Council of California Civil Jury Instruction No. 303 (describing the second essential factual element of a breach of contract claim as "[t]hat [Plaintiff] did all, or substantially all, of the significant things that the contract required [or] was excused from doing those things."). The plaintiff bears the burden of establishing each of these elements. *See Bank of Am., N.A. v. Roberts*, 159 Cal. Rptr. 345, 350 (Ct. App. 2013).

Here, the Court finds that Plaintiff's breach of contract claim fails because even if Plaintiff's allegations are sufficient to allege the existence of a contract[2], Plaintiff concedes that he did not perform under the agreement, and fails to identify an excuse for his non-performance. With respect to performance, Plaintiff asserts that he "was willing, and able to tender the amounts to begin the loan modification," but was unable to because Ocwen provided Plaintiff "four (4) different addresses where payments needed to be sent to." *See* FAC ¶¶ 34, 42. Plaintiff asserts the "contradictory information not only confused Plaintiff, but made it *impossible* for him to tender payments." Doc. No. 13 at 10 (emphasis added). Thus, because Plaintiff admits that he did not perform under the agreement, the Court must determine whether Plaintiff has identified an excuse for his non-performance.

With respect to excuses for non-performance, "California law requires a plaintiff to identify excuses for non-performance with specificity in the pleadings." *Berkeley v.*

---

[2] Plaintiff asserts that he has "made it very clear in his Complaint that he accepted the loan modification Agreement." Doc. No. 16 at 7. Plaintiff focuses on language in the loan modification proposal requiring him to contact Ocwen by phone or in writing to confirm his *intent to accept* the offer within 14 days. *See* Doc. No. 14-7 at 2. However, page six of the agreement expressly states that in order for Plaintiff to *accept* the proposal, he must: (1) *sign* the agreement; (2) fax the executed agreement to Ocwen; (3) pay the full initial payment; (4) pay the new monthly payment starting on November 1, 2015; and (5) send proof of insurance coverage. *See id.* at 6. Plaintiff, however, does not allege that he signed the agreement, faxed the executed agreement, remitted payment, or submitted proof of insurance coverage.

*Wells Fargo Bank*, 2015 WL 6126815, at *6 (N.D. Cal. Oct. 19, 2015) (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1389 (Ct. App. 1990)). In California, performance is excused when it is "prevented or delayed by the act of the creditor, or by the operation of law[.]" Cal. Civ. Code § 1511.

      Here, Plaintiff repeatedly claims that Ocwen provided Plaintiff with "four (4) different addresses where payments needed to be sent to." FAC ¶¶ 34, 42. Plaintiff asserts that he "tried to make payments on his Note," but was unable to because "Ocwen never provided Plaintiff with the correct address of where to send his payments," and "Plaintiff did not feel comfortable sending large sums of money to random addresses provided by different representatives[.]" Doc. No. 16 at 8-9. Plaintiff further claims that "Plaintiff did not know where to send the loan modification payment, and Ocwen singlehandedly prevent[ed] Plaintiff from tendering payment." FAC ¶ 42. Plaintiff's allegations, however, are undermined by the loan modification proposal which has been incorporated by reference into Plaintiff's FAC, and the Court is not required to accept the truth of such allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.") The loan modification proposal specifically outlines four different ways to tender payment to various addresses (i.e., overnight delivery, bank wire, money gram, or submitting payment to Western Union). *See* Doc. No. 14-7 at 3. Thus, Plaintiff had multiple options available to him. Lastly, Plaintiff does not allege that he attempted to send his payment to one of the four addresses provided, but was denied. As such, Plaintiff's allegations are insufficient to allege excuse of performance, and Plaintiff cannot state a claim for breach of contract. *See DirectTV, LLC v. E&E Enterprises Global, Inc.*, 2018 WL 707964, at *2 (C.D. Cal. Feb. 5, 2018) (dismissing first counterclaim for breach of contract for failure to specifically plead an excuse of performance).

      Accordingly, the Court **DISMISSES** Plaintiff's claim for breach of contract.

///

### 2. UCL Claim

In his second cause of action, Plaintiff alleges that Ocwen engaged in unfair competition by refusing to "honor the terms of the Agreement by singlehandedly preventing Plaintiff[']s attempt to tender payment on the Agreement." FAC ¶ 52. Ocwen's acts were "willful, oppressive, and malicious, in that [it] engaged in acts of unfair competition with the deliberate intent to injure Plaintiff." *Id.* ¶ 53. Ocwen argues the Court should dismiss Plaintiff's UCL claim again because Plaintiff fails to allege any unfair business practice. *See* Doc. No. 14-1 at 9.[3]

California Business & Professions Code § 17200 "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations omitted). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). An action brought under the "unlawful" prong of this statute "borrows" violations of other laws when committed pursuant to business activity. *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992).

---

[3] Ocwen also argues that Plaintiff lacks standing to sue under the UCL because Plaintiff fails to allege that he lost money or property as a result of the conduct he challenges. *See* Doc. No. 14-1 at 8-9. "To have standing to assert a Section 17200 claim, the plaintiff must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.'" *In re Turner*, 859 F.3d 1145, 1151 (9th Cir. 2017) (quoting *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (2011)); *see also* Cal. Bus. & Prof. Code § 17204. Here, Plaintiff claims that as a result of Ocwen's conduct, he has and continues to suffer harm including the possible loss of the subject property, loss of the opportunity to pursue foreclosure alternatives, loss of the opportunity to obtain a loan modification, back dues and interest that has accrued to date, which would not have accrued but for Ocwen's actions, and the cost and expense of the instant litigation. FAC ¶ 54. Such allegations are sufficient to allege standing. *See Segura v. Wells Fargo Bank, N.A.*, No. , 2014 WL 4798890, at *8 (C.D. Cal. Sept. 26, 2014) (finding the plaintiffs have standing to pursue a UCL claim because the plaintiffs "allege an injury that affected a property interest" and "adequately allege that the practices of which they complain are related to some form of loss they may have suffered related to the property[.]").

"The UCL does not define the term 'unfair.'" *Davis*, 691 F.3d at 1169. Under California law, it is well established that "a practice may be deemed unfair under the UCL even if not specifically proscribed by some other law." *Cel-Tech*, 20 Cal. 4th at 180. The California Supreme Court held that "unfair" means "conduct that threatens incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* Moreover, "any finding of unfairness to competitors under section 17200 must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* State appellate court opinions have been divided over whether this definition of unfair should apply to UCL actions brought by consumers. Thus, some courts apply the following balancing test: "[a] business practice is unfair when it 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1206 (E.D. Cal. 2013) (quoting *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (Ct. App. 1996)). "The 'unfairness' prong of the UCL 'does not give the courts a general license to review the fairness of contracts.'" *Id.* at 1206-07 (quoting *Samura v. Kaiser Found. Health Plan*, 22 Cal. Rptr. 2d 20, 29 n.6 (Ct. App. 1993)).

Lastly, under the fraudulent prong, a plaintiff must "show deception to some members of the public . . . [or] allege that members of the public are likely to be deceived." *Herrejon*, 980 F. Supp. 2d at 1207 (internal quotations and citations omitted). Fraudulent conduct must be pled with particularity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (noting that Rule 9(b) applies to claims in federal court under the UCL).

Here, the Court once again finds that in construing Plaintiff's allegations in the light most favorable to him, Plaintiff's allegations are insufficient to state a claim under the UCL. It appears that Plaintiff relies on the "unlawful" and "unfair" prongs of the UCL in his FAC. *See* FAC ¶ 52; Doc. No. 16 at 9 (discussing the "unlawful" and

"unfair" prongs of the UCL). With respect to the "unlawful" prong, Section 17200 "borrows" violations from other laws by making them independently actionable as unfair competitive practices. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). Because Plaintiff predicates his UCL claim on the same allegations and theories alleged in his breach of contract claim, and because Plaintiff fails to state a viable breach of contract claim, Plaintiff's UCL claim based upon unlawful conduct similarly fails. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) ("If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails.") (quoting *Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193, at *11 (C.D. Cal. Sept. 3, 2014)); *see also Simila v. Am. Sterling Bank*, 2010 WL 3988171, at *5 (S.D. Cal. Oct. 12, 2010) (dismissing claim for unlawful competition because all causes of action which the claim "borrows" are dismissed).

With respect to the "unfair" prong, the Court finds that Plaintiff fails to plead facts to show that Ocwen engaged in an unfair business practice under either the tethering test outlined by the California Supreme Court in *Cel-Tech* or the balancing test. Plaintiff alleges in conclusory fashion that Ocwen "refused to honor the terms of the Agreement by singlehandedly preventing Plaintiff's attempt to tender payment on the Agreement." FAC ¶ 52. Plaintiff claims that Ocwen "failed to provide an address for the payments to be tendered." *Id.* ¶ 34. Yet when Plaintiff contacted Ocwen representatives, such representatives "provided four (4) different addresses where payments needed to be sent to." *Id.* The Court is not required, however, to accept as true these contradictory allegations that are undermined by the loan modification proposal, incorporated by reference into Plaintiff's FAC. *See Sprewell*, 266 F.3d at 988. The loan modification proposal outlines four different ways to tender payment to various addresses (i.e., overnight delivery, bank wire, money gram, or submitting payment to Western Union). *See* Doc. No. 14-7 at 3. Thus, Plaintiff had multiple options available to him. Moreover, Plaintiff does not claim that he ever attempted to submit his payment, but was denied. Rather, Plaintiff was confused about where to send the payments; thus, he did not make

any payments. As such, the Court finds that Plaintiff's allegations are insufficient to allege a claim under the "unfair" prong of the UCL.

Accordingly, the Court **DISMISSES** Plaintiff's UCL claim.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Ocwen's motion and **DISMISSES** Plaintiff's FAC **with prejudice**. *See Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (noting that "where the plaintiff previously has been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad") (internal citation and quotation marks omitted). The Clerk of Court is instructed to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

Dated: June 14, 2018

HON. MICHAEL M. ANELLO
United States District Judge